Joseph H. Harrington
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                              Plaintiff,

              v.

DALE GORDON BLACK,

                              Defendant.

No. 4:18-CR-06029-EFS-1

Sentencing Memorandum

       Plaintiff, United States of America, by and through Joseph H. Harrington,

United States Attorney for the Eastern District of Washington, and Alison L.

Gregoire, Assistant United States Attorney for the Eastern District of

Washington, submits the following sentencing memorandum:

                    I.       STATEMENT OF FACTS

*Initiation of the Investigation*

       On July 18, 2017, SA McEuen & SA Burns, of the FBI, downloaded via

BitTorrent a partial child pornography video from the user at IP address

71.80.158.80.  On July 18, 2017, SA McEuen traced the origin of the IP address to

Charter Communications in Kennewick, Washington. SA McEuen served a

Government's Sentencing Memorandum - 1

subpoena upon Charter Communications. On August 3, 2017, Charter Communications responded to the subpoena, and reported the assigned subscriber of IP 71.80.158.80, from February 15, 2017 to July 24, 2017, as Dale Black, at a specific address, in Kennewick, Washington.

SA Burns queried local law enforcement databases for additional information regarding Black and learned Black had been arrested on April 20, 2017 for Rape of a Child (1st Degree), Child Molestation (1st Degree), and Two counts of Child Molestation (3rd Degree). This information triggered the FBI to seek a search warrant immediately out of concern for the potential risk to other children.

On August 14, 2017, SA Burns obtained a federal search warrant for Defendant's residence in Kennewick, Washington. The search warrant authorized seizure of evidence related to distribution, receipt, and possession of child pornography. On August 15, 2017, the federal search warrant was executed at the residence.

*Series Child Pornography*

Any number of items were seized from the residence. Defendant's Dell Desktop and his iPhone contained approximately 664 images of series child pornography and seven videos (total). The child pornography Defendant possessed, but did not produce, included images belonging to 35 different identified series. Some of these victims have requested restitution, as is detailed further herein.

Defendant's iMac computer contained over 11,000 encrypted files that could not be viewed. Of interest, however, the iMac also contained file sharing artifacts (BitTorrent and FrostWire). Also, several known child pornography series filenames were found, though the actual images were not found on the iMac.

Government's Sentencing Memorandum - 2

*Produced Child Pornography*

Review of Defendant's Dell tower revealed child pornography production material, in unallocated space (the images had been deleted).  The FBI discovered evidence Defendant had produced child pornography of at least three different children.  Specifically, Victim A- 24 images, Victim B - 23 images, Victim C 24 images, and 35 images with Victims B and C together. Of note, this includes duplicates or the same photo originally stored in multiple locations.

Victim A lived near Black when he was a child; he is one of the named victims in the state's child rape case.  He indicated he was victimized by Defendant from age 9 to age 14.  When Victim A was interviewed he spoke about how Defendant had befriended him, taking him camping and hanging out with him.  He would touch Victim A over and under his clothing and then he started taking pictures.  Defendant would tell Victim A how to pose for the photos having him stand naked and flex his muscles or hold his penis.  Some of the photographs of the "blonde" child are described in paragraph 16 of the PSIR.

The other two children were Defendant's mentee (Victim B) and his friend (Victim C).  These children were under age 12 for all abuse, the abuse beginning when they were 8 and 7 years of age respectively. Victims B and C came to know Defendant through Victim B's mentoring program.  Defendant had been a mentor for "Ignite," a mentoring group for at risk youth.  He had mentored young children in academic subjects and also traveled with them, to an overnight trip alone with the children.

Victim B was Defendant's mentee and would spend time at his home. Victim B would bring his friend, Victim C, as well.  During the forensic review of Defendant's computer, several photos were located of Victim B and Victim C in Defendant's home completely nude.  Some nude images were also located of

Government's Sentencing Memorandum - 3

Victim C's younger brother.  Those images did not focus on the genitals and were not charged in the federal case.

On Defendant's iMac computer, he had not only the images he had produced of the mentees, but also a spreadsheet detailing the trips and interactions he had with the mentees.  The spreadsheet even included release forms from their parents.

Defendant took his Ignite mentee and his friend (Victims B and C) on a trip to Seaside, Oregon from August 5th to August 7th in 2015.  They stayed at the Shilo Inn.  Defendant included the trip on his spreadsheet, and even provided such details as one of the kids losing a shoe, etc.  He does not detail any reason why the children needed to be in the room naked.  Located on Defendant's Dell computer in unallocated space were several photos of the children in the hotel room naked, some seemingly masturbating (the boys hands are on their genitals and they are looking at something on the television), some potentially involved in a sex act (the boys are naked and on top of each other).  Some of these photographs are noted in paragraph 16 of the PSIR.

SA Burns obtained the hotel receipts from the Shilo Inn, in Seaside, Oregon, on the relevant dates, which reflect the room was paid for by Defendant, and he had two minors with him.  He had a vehicle (white Subaru) at the time, which again, is consistent and accurate.  SA Burns obtained photos of the Shilo Inn hotel room and compared them to the child pornography production images.  The rooms were a match.  Defendant had taken the "at risk youth" to the Shilo Inn and had produced child pornography of them.

## II.    SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's Total Offense Level is 43, his Criminal History Category is I, and the resulting guideline range is 1080 months or 90 years, which is the statutory maximum.

Government's Sentencing Memorandum - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's using the most vulnerable children around him to produce pornographic images. ECF No. 53 at ¶¶ 12-22. Defendant was in a position of trust reference to the victims in this case. ECF No. 53 at ¶¶ 12, 20. Thus, the characteristics of Defendant include his willingness to abuse a position of trust.

Defendant's history is one of sexually abusing children. Though he has no previous criminal convictions for sexual abuse, Defendant has a long history of abusing children. The first known abuse was of in 2001 and the last in 2016. In fact, Victim A, the first known victim, detailed he came forward out of concern Defendant was continuing to abuse other children.

Defendant abused children from his neighborhood. That is how Victim A and another child, discussed below, came to be victimized. Beyond utilizing the trust relationships in his own neighborhood, Defendant utilized the Ignite mentoring program to gain access to children—children he would abuse. This is best illustrated by the letter of the mother of one of Black's former mentees. She writes, in relevant part, "I have also been thinking about the types of activities that I am comfortable with y'all doing, and I have to be honest that I much prefer that you not hang-out at your house with him . . . I think it puts you in a vulnerable liability as well to not have anyone else around." Defendant responds, "OK, with that level of discomfort, I'd like to end this mentor thing with [child's name]." The

Government's Sentencing Memorandum - 5

mother then forwarded the e-mail to Ignite writing, "Well, I set some boundaries with Dale, and he decided not to be [child's name]'s mentor."

A review of Defendant's Ignite Youth Mentoring paperwork is nothing short of heartbreaking. He indicates on his application that he leads a moral life equal to the Bible. His recommendation was written by Victim A's mother, and she cites that his involvement with her children as a friend and mentor. Victim B's mother indicates her son's need of the program because Victim B needed a "male figure" and "someone he could look up to."

    2.  <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks that the Court accept the plea agreement and sentence Defendant to imprisonment for thirty-five years. The government asks that the court also order a lifetime of supervised release. Such a significant sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

The gravity of Defendant's crimes against children, particularly given the abuse of trust that permitted Defendant's access to the children, cannot be overstated. In looking to just punishment, the government asks the Court to consider the victim impact statements. ECF No. 53-1.

Victim A discusses how growing up and living through the abuse he thought, "One day, I will be older and this will be over," only to grow older and continue to suffer the pains of having been a victim of sexual abuse. These include extreme stress associated just with being in his hometown, where the abuse occurred. ECF No. 53-1 at 1.

Victim A's mother discusses not only the impact the abuse had on her son, but on herself as well. She details the trust she had in Defendant—having made

Government's Sentencing Memorandum - 6

1
2
3
4
5

him a part of the family.  She details the lack of trust beyond immediate family at this point, and the isolation that has followed.  ECF No. 53-1 at 3.  She also discusses a very common theme in these letters that the Court knows all too well— guilt.  Guilt for trusting; guilt for not knowing; guilt for not being in all places at all times and assuming the worst of intentions from her neighbor, Mr. Black.

6
7

Victim A's father too wrote a victim impact statement.  He too discusses guilt, asking "[W]hat could I have done to prevent this?" ECF No. 53-1 at 4.

8
9
10
11
12
13
14
15

Even the child victims in these cases find a way to feel guilty for what has happened to them.  In this case, Victim B was forensically interviewed.  He was asked about naked pictures and ultimately presented with a redacted child pornography image of himself.  Victim B that he did not "remember that."  He then began crying and trying to hide his face from the interviewer, ultimately hiding under a blanket in the room. Victim B then starts to blame himself for the pictures by saying, "I was such an idiot."

16
17
18

There is one person at fault for these actions.  It is not a parent, and it certainly is not a child victim.  There is one person who is guilty, and that person is the Defendant.

19
20
21
22
23
24
25

It is genuinely difficult to overstate the seriousness of the offense in this case.  As a result of Defendant's crime, lives are forever changed.  This is not a hypothetical in this case.  Defendant was able to carry on his pattern of abuse for so long, the Court can see any number of victims and family members at different stages in the process of attempting to heal from what Defendant has done.  The victims have detailed the impact Defendant's acts have had and continue to have on their everyday lives, most especially ability to trust others.

26
27
28

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant's abuse of children was not a discrete act or a momentary lapse in judgment. The abuse went on over many years and ensnared many children. Adequate deterrence will be a significant task. Victim A asks the court to "put him away long enough that he can never hurt another fragile, innocent boy." ECF No. 53-1 at 2. His mother notes that she believes he must forgive Defendant, "But I don't have to trust that Dale won't do this to another trial. And it's because of this lack of trust that I ask that Dale Black is sentenced to the longest possible sentence under the law. It is my fear that if Dale Black is released from custody that he will molest another innocent child." ECF No. 53-1 at 3. Victim A's father indicates "I ask the Court that you pass down a sentence to Dale Gordon Black that will not allow him to get out and hurt anyone else." ECF No. 53-1 at 5.

A child not mentioned in the Indictment, but detailed in the PSIR is Victim 2. ECF NO. 53 at ¶ 13. Victim 2 (referred to as Victim 2 because he is not named in the federal charges, as opposed to A, B, and C) was living near Defendant for a while for a while. He helped Defendant with flooring for a few weeks and during that time, he was sexually abused. Defendant began with typical grooming behavior such as massages getting close to the genital area on Victim 2's body. Later in the month, Defendant would masturbate Victim 2 with Jergens lotion. When Victim 2 originally reported what had happened to him to a family member, he was not believed.

Though no photos were recovered of Victim 2, it is certainly appropriate and indeed important, for the Court to consider the misconduct. The state's sentence, and thus the charge detailing Victim 2, will run concurrent with this Court's sentence. Further, Victim 2's account further illustrates Defendant's continuing

Government's Sentencing Memorandum - 8

pattern of abuse, and the necessity of a significant sentence to afford adequate deterrence.

The government, however, recommends a lifetime of supervised release. The government is concerned by the recidivism rate for sex offenders generally. *See* Dept. of Justice, Bureau of Justice Statistics, P. Langan, E. Schmitt, & M. Durose, *Recidivism of Sex Offenders Released in 1994*, p. 1 (Nov. 2003) (reporting that compared to non-sex offenders, released sex offenders were four times more likely to be rearrested for a sex crime, and that within the first three years following release 5.3% of released sex offenders were rearrested for a sex crime); *Smith v. Doe,* 538 U.S. 84, 104 (2003) ("The risk of recidivism posed by sex offenders is 'frightening and high.'") (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)).  Additionally, Defendant committed his offenses on particularly vulnerable children, as has been detailed herein.  The circumstances of the three charged victims are detailed above.  Given Defendant's demonstrated willingness to pursue victims in vulnerable states, the government argues he should be under the supervision of a United States Probation Officer for the rest of his life.

The government is confident the recommended thirty year term of imprisonment followed by supervised release for life will accomplish adequate deterrence.

4. The need for the sentence imposed to protect the public from further crimes of Defendant.

As has been detailed, Defendant's crime is terribly serious and has had a significant and lasting impact.  The victims have noted Defendant's recidivism and their concerns about his continuing recidivism in their letters to the Court.  This is an individual who has continued to victimize children for over a decade.  He has affirmatively taken steps, and even filled out applications, to do it.  The public,

Government's Sentencing Memorandum - 9

particularly children, require protection from Defendant and the United States believes the requested 35 year sentence is appropriate.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training.

6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment. The offense to which Defendant pled guilty carries a mandatory minimum sentence of fifteen years imprisonment.

7. <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplates a term of imprisonment.

8. <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

Defendant is subject to a sentence similar to others similarly situated.

IV.    RESTITUTION, FINES, ASSESSMENTS, AND FORFEITURES

The Court should impose mandatory restitution, a maximum statutory and guideline fine of $750,000, the mandatory $5,000 special assessment in accordance with the Justice for Victims of Trafficking Act 2015 ("JVTA") (18 U.S.C. § 3014(a)), and enter a final order of forfeiture as to the property identified in the preliminary order of forfeiture.

A.    <u>Restitution</u>

Restitution is mandatory pursuant to 18 U.S.C. §§ 2259 and 3663A. The Court should order that Defendant pay restitution in the full amount sought by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Victim A, as agreed to by the Defendant in the Plea Agreement. *See* ECF No. 49 at 16. In addition, the Court should order restitution in the full amounts sought by the other victims in this case.[1] *Id.* ("Defendant understands and agrees that the Court, in addition to any other penalty, the Court [*sic*] may order Defendant to make restitution any other victims of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not Defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement"); ECF No. 53 at 17. Pursuant to 18 U.S.C. § 3664(f)(2), (3), the Court must specify the manner in which payment of the restitution is made based on the Defendant's assets and obligations and may order the Defendant to make a single, lump-sum payment immediately upon sentencing. In this case, Defendant has significant assets totaling more than $1 million. ECF No. 53 at 15. The amount of restitution currently sought totals $71,565.[2] ECF No.

---

[1] The United States continues to seek restitution requests and information from Victims B and C. At this time, it has been unable to secure restitution figures from those two victims.  The United States may request an additional 90 days post-sentencing to inform the Court of a final determination of the losses incurred by Victims B and C. 18 U.S.C. § 3664(d)(5) ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.").

[2] The parties agree to the amount of restitution sought by Victims A, SurferHair, and RapJerseys, which totals $13,150. Victim SpongB has requested restitution of $58,415. ECF No. 53 at 7, 17. The United States has sought additional information

Government's Sentencing Memorandum - 11

53 at 7, 17. As such, the Court should order the Defendant to pay the restitution in full, in a single lump-sum payment, immediately upon sentencing.

      B.    <u>Fines</u>

The Defendant is subject to a $250,000 statutory fine per count of conviction, for a total statutory fine of $750,000. 18 U.S.C. § 3571(b). The Sentencing Guidelines fine range for the offenses of conviction is $50,000 to $750,000. ECF No. 53 at 16; U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1). The United States requests that the Court impose the maximum statutory and guideline fine of $750,000 against the Defendant.

The Sentencing Guidelines state that "the court <u>shall</u> impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). Here, the imposition of a fine is mandatory under the Sentencing Guidelines because the Defendant has the ability to pay a fine up to the maximum statutory and guideline amount, as explained below.

The imposition of fines and their amount is subject to the factors of 18 U.S.C. § 3572(a) and U.S.S.G. § 5E1.2(d). *See United States v. Eureka Labs., Inc.*, 103 F.3d 908, 913–14 (9th Cir. 1996) ("A sentencing court is required by 18 U.S.C. § 3572 to consider several factors when deciding whether to impose a fine and in what amount"). The Court is not required, however, to address every factor

---

in support of the restitution request from counsel for Victim SpongB and is awaiting a response. Unless further information is received, the United States and Defendant agree to restitution in the amount of $6,000 for Victim SpongB. If that amount of restitution is ordered, the restitution owed by the Defendant would be reduced to $19,150.

Government's Sentencing Memorandum - 12

of § 3572 at sentencing "if the record, taken as a whole, indicates that the trial court considered the section 3572 factors." *Id.*; *see also United States v. Great Guns Inc.,* 7 F. App'x 666, 666–67 (9th Cir. 2001). Here, the factors of § 3572(a) and § 5E1.2(d) <u>all</u> favor the imposition of a fine.

Section 3572(a) states that "[i]n determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider…":

> (1) the defendant's income, earning capacity, and financial resources;
>
> (2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
>
> (3) any pecuniary loss inflicted upon others as a result of the offense;
>
> (4) whether restitution is ordered or made and the amount of such restitution;
>
> (5) the need to deprive the defendant of illegally obtained gains from the offense;
>
> (6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;
>
> (7) whether the defendant can pass on to consumers or other persons the expense of the fine; and
>
> (8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the

Government's Sentencing Memorandum - 13

organization responsible for the offense and to prevent a recurrence of such an offense.

All of the § 3572 factors support the imposition of a fine. The foremost inquiry, the Defendant's ability to pay, clearly favors a fine. The Defendant has disclosed assets totaling $1,051,336, plus a monthly pension of $3,100. ECF No. 53 at 15. Defendant's disclosure, however, significantly understates his actual assets because he deducted potential future taxes, penalties, and costs from those assets, even though any such taxes, penalties, or costs are unrealized. *Id.*; *see also* Exhibit A, filed as a restricted document (Dale Black Financial Disclosure).[3] For example, Defendant's Vanguard 401(k) had an actual value of $995,081 on January 21, 2019. Exhibit A at 1. However, Defendant deducted potential, unrealized future taxes of $330,298 from the actual value of the investment, thus providing a significantly understated asset value of $664,783. *Id.*; ECF No. 53 at 15. Using the actual values of all of Defendant's assets, he had assets totaling $1,420,988, plus his monthly pension, as of January 21, 2019, which is much higher than the stated total of $1,051,336. Nonetheless, whether the Court relies on the actual value or understated value of Defendant's assets, the Defendant clearly has the "income, earning capacity, and financial resources" to pay a maximum fine of $750,000.

---

[3] The United States relies on the uncorroborated account values stated by the Defendant in his own written disclosure. Exhibit A. The Defendant did not provide any account statements supporting the accuracy of the figures he provided. In addition, the figures provided are as of January 21, 2019. *Id.* Defendant's assets may have increased based on market conditions in the last five months.

Government's Sentencing Memorandum - 14

A maximum fine of $750,000 would not affect the Defendant's ability to pay restitution, nor is the restitution amount so high that it should preclude the imposition of a fine. 18 U.S.C. § 3572(a)(4), (b). Taking the Defendant's assets in the PSR at face value – which significantly understates the actual value of his accounts and investments as explained above – a maximum fine of $750,000 plus restitution up to $71,565 and a $5,000 JVTA assessment (see below) would still leave the Defendant with $224,771 in assets along with a monthly pension of $3,100. ECF No. 53. If the actual value of the assets are considered, the Defendant would be left with assets of approximately $594,423, plus his monthly pension, after payment of restitution, a maximum fine, and the JVTA assessment.

The expected costs to the government of imprisonment and supervised release also supports the entry of a maximum fine. 18 U.S.C. § 3572(b)(6). The annual cost of imprisonment is estimated at $36,300. ECF No. 53 at 17. At 15 years imprisonment, the minimum sentence recommended by the parties, the cost of imprisonment would be $544,500. Plus, a lifetime of supervised release would significantly increase the costs, thus further warranting a maximum fine.

The remaining § 3572 factors are inapplicable as the Defendant does not have any dependents (ECF No. 53 at 13), nor are there any ill-gotten proceeds or corporate concerns implicated in this matter.

The factors enumerated in U.S.S.G. § 5E1.2(d) are very similar to the § 3572 elements. Section 5E1.2(d) states that "[i]n determining the amount of the fine, the court shall consider":

> (1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

Government's Sentencing Memorandum - 15

(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense;

(7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and

(8) any other pertinent equitable considerations.

As demonstrated above, the Defendant's ability to pay, the absence of any dependents of the Defendant, the lack of an adverse effect on restitution, and the expected costs to the government for a term of imprisonment all favor the imposition of a maximum fine.

The remaining § 5E1.2(d) factors also support a maximum fine. The offense conduct is an extremely serious offense which resulted in very significant harm to the Defendant's victims as explained in detail above. As such, a maximum fine is warranted to promote the rule of law, impose just punishment, and deter future conduct. U.S.S.G. § 5E1.2(d)(1). Likewise, any other equitable considerations favor the imposition of a fine, including the seriousness of the offense conduct, the significant harm to the victims, the need for deterrence, and the fact that after payment of the maximum fine the Defendant would not be rendered destitute and

would still have assets of approximately $250,000 to $600,000. Finally, any collateral consequences of the conviction do not affect the fine since the Defendant has sufficient assets to pay all monetary penalties and the Defendant has not been fined previously for a similar offense.

The Sentencing Guidelines further state that "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." U.S.S.G. § 5E1.2(d). Given the Defendant's significant assets, a maximum fine of $750,000 would ensure that the fine is punitive.

Based on the Defendant's significant liquid assets, the United States requests that the Court order the Defendant to pay the fine in full immediately upon sentencing. 18 U.S.C. § 3572(d)(1) ("A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments").

Finally, the fine paid by the Defendant would not simply go into the Government's pocket. By statute, the Defendant's fine payment would be deposited with the Crime Victims Fund. The money in the Crime Victims Fund is then distributed through several direct programs and grants to states, including funding the Children's Justice Act which helps states and tribes develop, establish, and operate programs to improve the investigation and prosecution of child abuse and neglect cases, particularly cases of child sexual abuse and exploitation, and to improve the handling of cases of suspected child abuse or neglect fatalities.

C.    JVTA Assessment

Pursuant to 18 U.S.C. § 3014(a)(3), the Court shall impose a $5,000 JVTA assessment against the Defendant for his conviction for an offense under Chapter

Government's Sentencing Memorandum - 17

110. The only exception to the JVTA assessment is indigence, which does not apply to the Defendant. ECF No. 53 at 15.

Section 3014(b) provides that the JVTA assessment shall not be payable by the Defendant until he has satisfied all outstanding fines and orders of restitution. Since the Defendant has the ability to immediately pay the restitution and fine sought by the United States, the Defendant should likewise be required to pay the JVTA assessment immediately upon sentencing.

D.    Forfeitures

As the result of the Defendant's guilty plea to Counts 1, 2, and 3, of the Indictment, filed on June 5, 2018, charging the Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), for which the United States sought forfeiture of assets pursuant to 18 U.S.C. § 2253 (ECF No. 49 at 19-22), and the Preliminary Order of Forfeiture entered December 18, 2018 (ECF No. 51), the United States requests that the Court enter a final order of forfeiture at sentencing in accordance with Fed. R. Crim. P. 32.2(b)(4) forfeiting the following property from Defendant:

- Any and all digital devices and peripherals, computers, external hard drives, iPads, phones, and cameras, including but not limited to the following listed assets:

- Dell Desktop Computer Model XPS 8500, Serial Number HDLC4V1

- Apple iPhone 6, Model A1549, IMEI Number 354406064655583

- Apple iMac 27 inch Computer Model, A1419, Serial Number WCC4M2XUKZ9D

Government's Sentencing Memorandum - 18

- Western Digital My Book HD External Hard Drive, Serial Number WCC4M2XUKZ9D

- 2015 Subaru Legacy, VIN: 4S3BNAN68F3057860, Washington License Plate: AUX4435

- $185,900 U.S. Currency (cash in-lieu of forfeiture of Defendant's residence)

The forfeiture of the foregoing assets is separate and distinct from the restitution, fine, and JVTA assessment sought by the United States. *See United States v. Newman,* 659 F.3d 1235, 1240-41 (9th Cir. 2011) ("When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits... Criminal forfeiture is also separate from restitution, which serves an entirely different purpose. Congress conceived of forfeiture as punishment for the commission of various [crimes]."); *United States v. Davis,* 706 F.3d 1081, 1083 (9th Cir. 2013) ("Forfeiture is imposed as punishment for a crime; restitution makes the victim whole again").  The Ninth Circuit has repeatedly held that imposing forfeiture and restitution is not double recovery.  "Although Defendants must pay both restitution and criminal forfeiture, that result is not an impermissible 'double recovery.'" *Newman, 659 F.3d at 1241*; *see also United States v. Feldman*, 853 F.2d 648, 663 (9th Cir. 1988) (the district court does not lose its discretion to impose restitution merely "because a defendant must also forfeit the proceeds of illegal activity")

Accordingly, the imposition of forfeiture against the Defendant should not have any bearing on the imposition of other monetary penalties, except to the extent it would affect the Defendant's ability to pay the fine under the factors addressed above, which it does not. Moreover, the forfeiture of the vehicle and $185,900 were already taken into account in the Defendant's financial analysis,

Government's Sentencing Memorandum - 19

which shows assets in excess of $1 million. *See* ECF No. 53 at 15 (the assets list excludes the 2015 Subaru and reduces the equity in the residence to reflect the Government's forfeiture of $185,900).

V.      GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the court impose a sentence to thirty-five years imprisonment as well as a lifetime term of supervised release.  The government also recommends the court restitution to the victims.

Respectfully submitted this 25th day of June 2019.

Joseph H. Harrington
United States Attorney

*s/ Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Scott W. Johnson, scott@johnsonorr.com

*s/Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney

Government's Sentencing Memorandum - 20