SCOTT W. JOHNSON, WSB# 27839
Attorney at Law
Johnson & Orr, P.S.
1038 Jadwin Avenue
Richland, Washington 99352
(509) 579-0080
Email: scott@johnsonorr.com

Attorney for Defendant,
Dale Gordon Black

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### RICHLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>DALE GORDON BLACK,<br><br>　　　　Defendant, | Case No.: 4:18-CR-06029-EFS<br><br>**DEFENDANTS SENTENCING MEMORANDUM**<br><br> Date:  July 16, 2019<br> Time: 10:45 a.m.<br> Place: Courtroom 326<br><br>**Honorable Edward F. Shea** |

Defendant Dale Gordon Black, by and through his attorney of record, Scott W. Johnson, hereby submits his Sentencing Memorandum,[1] setting forth the factors the Court should consider in determining what type of sentence is sufficient, but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

---

[1] Mr. Roger Pimentel, a sentencing consultant, assisted in the investigation and preparation of this filing. Mr. Pimentel's Curriculum Vitae is attached as Exhibit B.

# **TABLE OF CONTENTS**

I.      OPENING COMMENTS ……………………………………...…….…….4

II.     SUMMARY OF DEFENDANT'S SENTENCING MEMORANDUM………..5

    A.  Procedural Posture……………………………………………………….5
    B.  Summary of the Argument……………………………………………….6

III.    THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT
    PURSUANT TO 18 U.S.C. § 3553(a)(1)……………………………….……8
    -Familial History and the Early Years……………………………………8
    -Dale's Formative Years…………………………………………………11
    -Dale Black, A Hard-Working Man and Professional Engineer…...…….. 12
    -Dale Black Today and His Personal Struggles………………………...... 13
    -An Overview of Addiction……………………………………………….13
    -Dale Black is Vulnerable to Victimization or Abuse in Prison………….. 14
    -Character Reference Letters on Behalf of Dale Black…...…………..…...16

IV.     FACTS OF THE CASE AND PROCEDURAL BACKGROUND…………...17

V.      APPLICATION OF THE SENTENCING GUIDELINES IN THIS CASE
    OVERSTATES THE SERIOUSNESS OF MR. BLACK'S CONDUCT……..17

    -The Government is asking this Court to sentence Mr. Black extremely above
    sentences given to Murderers, Kidnappers, Hostage Takers, and others
    Physically Abusing Children. Such a request is unjust……………………..21

VI.     THE STATUTORY SENTENCING FACTORS IN 18 U.S.C.§3553(a)
    REQUIRE A SENTENCE BELOW THE GUIDELINES RANGE…………..22

    A.  The Nature and Circumstances of the Offense 18 U.S.C.§3553(a)(1)…….24
    B.  The Purposes of Sentencing 18 U.S.C. § 3553(a)(2)……………………... 25

        1.The Seriousness of the Offense and Promoting Respect for the Law,
          and Just Punishment (18 U.S.C. 3553(a)(2)(A)……………………...26,27

        2. Deterrence 18 U.S.C. § 3553(a)(2)(B)…………………………………27

        3. The Need to Protect Society 18 U.S.C. § 3553(a)(2)(B)……………....27

VII.    RESTITUTION AND FINES …………………………………..…….30

VIII.   CONCLUSION……………………………………………………..…….35

IX.     LIST OF EXHIBITS…………………………………………………...38

## Table of Authorities

**CASES**                                                                        **Page(s)**

Pepper v. United States, 131 S. Ct. 1229, 1239, 1240 (2011)…………………………....4,23

United States v. Booker, 125 S. Ct. 738, (2005)……………………………………………6,20

Gall v. United States, 128 S.Ct. 586, 591 (2007)……………………………6,23,24,25,29,31

United States v. Grober, 624 F.3d 592 (3rd Cir.2010)………………………..……………6,19

United States v. Parish, 308 F.3d 1025, 1031 (9th Cir. 2002)…………………...……………15

Koon v. United States, 518 U.S. 81,116 (S.Ct.2035-1996)…………………..…………………15

United Sates v. Rita, 551 U.S. 338, 349 (2007)………………..……………………17,23,24

Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)…………………………………………20

Kimbrough v. United States, 128 S. Ct. at 570 (2007)…………………………20,21,22,23,24

United States v. Mead Corp., 533 U.S. 218, 234, (2001)…………………..……………20,21

Kimbrough v. United States, 128 S. Ct. at 570 (2007)…………………………20,21,22,23,24

Nelson v. United States, 129 S.Ct. 890,891 (2009)………………..…………………22,23

United States v. Hunt, 459F.3d 1180, 1184 (11th Cir. 2006)………………………………23,24

United States v. Grossman, 513 F.3d 592, 595 (6th Cir.2008)…………………..……………24

United States v. Olhovsky, 562 F.3d 530, 551-52 (3rd Cir. 2009)………………………...25,26

United States v. Bragg, 582 F.3d 965, 973 (9th Cir. 2009)………………………………29

# I.
## OPENING COMMENTS

Mr. Dale Gordon Black submits to this Court as a man who is deeply remorseful and demonstratively affected by the pain, suffering, and humiliation he has caused the victims in this case. Mr. Black has had significant time to reflect on his actions and criminal conduct in this matter and is distraught over the anguish it has caused both to the victims, their families, and his own family.

Few legal principles are as deeply entrenched in our present jurisprudence as the concept of individualized sentencing. As the Supreme Court, has observed:

> It has been uniform and constant in the federal judicial tradition
> for the sentencing judge to consider every convicted person
> as an individual and every case as a unique study in the
> human failings that sometimes mitigate, sometimes magnify,
> the crime and the punishment to ensue. Underlying this tradition
> is the principle that the punishment should fit the offender and
> not merely the crime.

*Pepper v. United States, 131 S. Ct. 1229, 1239, 1240 (2011).*

Thus, in each case a sentence should reflect an individualized assessment of a particular offender's culpability and potential success in the community rather than a mechanical application of a given sentence to a particular category of crime.

This memorandum will not only provide a legal basis for Mr. Black's requested sentence, but investigate and examine his background, character, and value system in an effort to understand his behavior in this case. As a life-long, hard working, respectful man, Mr. Black's behavior in this case is incongruent with the responsibility he has shown in other areas of his life.

## II.
## SUMMARY OF DEFENDANT'S SENTENCING MEMORANDUM

Mr. Black is prepared to accept the sentence the Court finds appropriate pursuant to the plea agreement filed in this case. Mr. Black understands that accepting responsibility for his conduct will include a significant period of incarceration in federal custody. Mr. Black, through his lawyer, moves the court to vary from the calculated but draconian guideline range of "life", which exceeds the statutory maximum, and impose a "reasonable, fair, and just punishment" of 180 months, with an appropriate term of supervised release, which is more than sufficient to meet the purposes of 18 U.S.C. §3553(a)(2).

### A. Procedural Posture

1.   Mr. Black is charged by Indictment with seven counts – Counts 1-3: *Production of Child Pornography,* a violation of 18 U.S.C. §2251(a),(e); Count 4*: Transportation of Minors for Illegal Sexual Activity,* a violation of 18 U.S.C. §2423(a); Count 5: *Receipt of Child Pornography*, violation of 18 U.S.C. §2252(a)(2); Count 6:  *Distribution of Child Pornography* a violation of 18 U.S.C. §2252(a)(2); and Count 7: *Possession of Child Pornography*, a violation of 18 U.S.C. §2252A(a)(5)(b).

2.   Pursuant to a written plea agreement Mr. Black entered a plea of guilty to counts 1-3; violations of 18 U.S.C. §2251(a),(e), *Production of Child Pornography.* In exchange the Government has agreed to dismiss Counts 4-7 of the Indictment. Additionally, the plea agreement will resolve Benton County Superior Court case #17-1-00386-6, which arose from the same underlying conduct. Also, the Government agrees to recommend a three level reduction for acceptance of responsibility and timeliness of guilty plea (PSIR at ¶, ¶, 62,63). The statutory maximum range of imprisonment for each count is 30 years (PSIR at ¶ 100).

A five year to lifetime period of supervised release is available (PSIR at ¶ 88).

3. The Pre-Sentence Investigation Report (PSIR), pursuant to U.S.S.G. § 2G2.1 finds that the Total Offense Level is 43 and the Criminal History Category I (PSIR at ¶¶ 64,70). The resulting recommended Guideline range of imprisonment is 1080 months (PSIR at ¶ 101).

4. Mr. Black moves the court to sentence him pursuant to the plea agreement and a "reasonable and just" sentence of 180 months, followed by lifetime supervised release.

## B. Summary of the Argument

5. The Guidelines are advisory. *United States v. Booker,* 125 S. Ct. 738, (2005), *Gall v. United States*, 128 S.Ct. 586, 591 (2007). The properly calculated guideline range is not to be presumed reasonable by the district court. *Gall v. United States.* Recently, the child pornography guidelines, which also includes to a lesser degree production offenses,  have been criticized and scrutinized as the product of Congressional mandates with no empirical support or distinction for differences between offenders. *United States v. Grober, 624 F.3d 592 (3rd Cir.2010)*; United States Sentencing Commission, REPORT TO CONGRESS: CHILD PORNOGRAPHY OFFENSES (December 2012). This is contrary to the goals of sentencing expressed in 18 U.S.C. §3553.

6. Analysis of the facts of this case and application of §3553 factors favors a downward variance to a "reasonable and just" custodial sentence, followed by a stipulated term of lifetime supervised release.

7. Dale Gordon Black is a 62 year old man, who has **voluntarily** pled guilty to three seperate counts of Production of Child Pornography. The charges, as indicated in the plea agreement and statement of facts, involve Mr. Black producing sexually explicit images with multiple minors. One minor, was a nearby neighbor whom he befriended, while the other

two minor children connected to Mr. Black were particiapnts in a youth program. While Mr.

Black shamefully admits to his conduct, he also notes that there was no violence or fear

perpertrated while producing the sexually explicit material, meaning Mr. Black did not

sexually penetrate, forcibly rape, or bind any minor children during the course of his conduct.

The investigation also resulted in the seizure of illicit child pronography images and videos.

Up until the present matter, Mr. Black was viewed as a law-abiding citizen, gainfully

employed, a pillar of the community, a hard-working man, and loving son. Dale Black, ***a first-
time offender***, now faces a potential guideline sentence that could incarcerate him for his

remaining years.  If the Court follows a presently flawed guideline, and the original sentencing

calculation of the probation office Mr. Black faces a 30-year sentence. Indisputably, the

production of child pornography is a very serious offense, as reflected by the potential

penalties in such cases. However, as demonstrated below, on multiple levels, Dale Black

deserves a reasonable sentence which will also be sufficient to promote the goals of sentencing.

Also, such a sentence is not greater than necessary given the circumstances of the case and

personal characteristics of the defendant.

   8.  Since his initial contact with case agents, Mr. Black has been cooperative with law

enforcement and the judicial system as evidenced by his immediate admissions and timely

guilty plea, ***a guilty plea that spared both the justice system and victims the need for a
criminal trial.***  Additionally, Mr. Black has agreed to large restitution amounts payable to the

victims, and is selling real property to satisfy these amounts, rather than litigate the issue. Mr.

Black wholeheartedly accepts responsibility and is sincerely remorseful, and thus should

receive some rightful benefit of entering into a plea agreement with the Government. Letters of

support (Exhibit A) describe a man who has a strong work ethic, is kind, considerate and

responsible, a devoted brother, a thoughtful and loyal son, and a man who always puts the needs of others first. These letters, written from the heart by family members are the best evidence of Dale's character.

9.   Based on his lack of criminal history, his extraordinary work ethic, his ***unconditional acceptance of responsibility***, his contributions to the community, a reasonable and just sentence of 180 months coupled with lifetime supervision and stringent terms and conditions including sex offender registration and on-going mental health treatment, would be sufficient to reflect the seriousness of the offense, to deter future crimes, to promote respect for the law, to protect the public and to provide just punishment for the offense as called for by *18 U.S.C. §3553 (a)(2)(A-D).* Additionally, despite the underlying offense conduct, Mr. Black poses nearly no risk of recidivism. A risk assessment tool[2] administered to Mr. Black (see Exhibit B), similar if not identical to testing used by the Probation Office and the Bureau of Prisons to assess risk, also reveals that Mr. Black is at minimal risk of reoffending.

## III.
### THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT
### *18 U.S.C. § 3553(a)(1)*

The following was compiled following extensive interviews with Dale Gordon Black, and family members. Additionally, an in-depth investigation was conducted into Mr. Black's personal background and life history. This included a review of his employment records, school

---

[2] The Static 99 is a ten item actuarial assessment instrument created by R. Karl Hanson, Ph.D., and David Thorton, Ph.D., for use with adult male sex offenders who are at least 18 years of age at time of release to the community. It is the most widely used sex offender risk instrument in the world, and is extensively used in the United States, Canada, the United Kingdom, Australia, and many European nations.

records, medical records, and character reference letters, which have been appended for the Court's consideration.  An understanding of Dale's family background and history gives insight into his self image and social development.

**Familial History and the Early Years**

During the mid-1950's the United States was entering an era of prosperity and technological development. The United States was finally free from international turmoil, automobiles for the American family were becoming common place, and rock and roll music was dominating the radio waves. It is in this backdrop, that Dale Gordon Black was born on June 13, 1956, in Pasco, Washington to William and Joanne Black. Dale was the oldest of four siblings born to this marital union. Dale's mother recalls that the birth of her first child was an incredibly exciting time for the young couple and their families. William and Joanne were college sweethearts, at Washington State University, who married young.

The Black family was already well established in the Tri-Cities area. The family  described it as the idyllic Pacific Northwest town with a real sense of "community."

Dale's father, "Bill", had worked his entire professional life for Hanford as an engineer. The end of his career saw the decommissioning of the plant and the end of a by-gone era. In total, Dale's father worked as an engineer in the nuclear industry for nearly 50 years. Dale's mother, Joanne, was the primary care giver of the family. Joanne's focus in life was raising three boys and an adopted daughter later in life. She was very involved in the PTA, school boards, and all of the childrens youth activities.

Early memories for Dale include a seemingly quiet childhood in which he attended neighborhood elementary schools. Dale did struggle with peers resulting from social

awkwardness and shyness. Dale tended to be a loner and was targeted by bullies. This saddened Dale as a child.  He does remember riding bicycles and playing with his neighborhood friends and siblings in the neighborhood. Dale recalls his father was always  working but took time to spend with him. Dale has fond memories of his mother during these early years. Joanne was a loving and nurturing mother, who would write her son a note every year on his birthday and stored it in a memory box. She was probably overprotective of Dale, as he was the first-born of the family. Dale recalls that these early years were filled with loving memories of family gatherings, neighborhood parties, and good times.

Growing up Dale recalls that his family lived a middle-class lifestyle. While they did not have luxury items or fancy cars there was never a shortage of food or clothing. They lived in a nice suburban neighborhood. Early memories for Dale include a seemingly quiet childhood in which he attended neighborhood schools. At Marcus Whitman Elementary School, he excelled throughout the early years, always receiving good marks in language, mathematics, and social sciences. Dale also remembers times that the family was able to vacation with local camping trips and visits to family in the area. The holidays was always filled with a home full of cheer and family members. Dale describes his early childhood as the type of childhood that most people would want.

**Dale's Formative Years**

As the 1960's came and went, Dale experienced many cultural changes throughout his formative years. During this time the country was entering an era of turmoil. America was engaged in an unwinnable war in Vietnam, civil rights protests illustrated a divisive

social problem, and the hippie movement pushed experimentation with controlled substances and sexuality.

Dale eventually moved on to Carmichael Middle School in Richland. From the earliest days of Dale's education, it was evident that his social skills were tempered with shyness and awkwardness. However, Dale progressed academically continuing his good marks and interest in school.  Dale's middle school years were also the years in which he was first introduced and fascinated by pornography. Similar to many adolescent boys of the 60's, Dale was exposed to pornographic magazines like Playboy.

Dale was also close to his brother Steve, who was closest to him in age. Dale was very protective of his younger brother. At times, Dale and Steve were almost inseparable.

As Dale progressed to high school, he started to grow out of his awkwardness and became physically mature in stature. This improved his efforts with peers and socially. Also, as most adolescents, he struggled with his sexuality. Dale suspected that his sexual orientation was homosexual, however the thought of "coming out" to his family was not realistic in the late 1960's. Exacerbating his confusion, was his continued exposure to pornography which only depicted male/female sexual activity, thus confirming to Dale that his orientation was not "normal". This is a struggle that Dale managed into his adult years.

In the midst of Dale's high school years, the family had relocated to Connecticut, as his father had accepted a new assignment. This frustrated Dale as he had already struggled socially. Dale entered a new high school and focused on his studies. The sciences and math continued to be his best subjects. The long winters and loneliness challenged Dale and pushed him into further isolation.  Fortunately, for Dale, the family returned to the Richland area in

time for Dale's senior year of high school. His return home provided Dale with familiarity as he graduated, with honors, from Hanford High School in 1974.

### Dale Black, a Hard Working Man and Professional Engineer

Dale had always been a hard worker. In his teen years and throughout college, Dale had worked in the local supermarket, starting as a box boy and eventually working in different areas of the market with increased responsibility. Following high school, Dale gained admission to Washington State University where he studied chemical engineering. Dale applied himself to his studies in a manic and vigorous manner. This resulted in placement on the President's honor roll and other academic accolades. He ultimately received a Bachelor of Science degree in the rigorous program.

Dale's hard work in college led to his skill sets being immediately in demand. The late 1970's saw a transition in the regional nuclear industry of Eastern Washington. With the need for nuclear power at a minimum combined with the Three Mile Island incident on the east coast, the focus of the industry was moving toward nuclear waste management and clean up. For the next 30 years, Dale found himself contributing to this mission and being employed, on a contract basis, to federal government providers such as Rockwell, Westinghouse, River Protection Services and others. Similar to his father, Dale would work at the Hanford site for decades. Dale's work always required a security clearance. Dale's career was important and noteworthy. He rarely missed a day of work and was proud of his accomplishments.

In 2011, Dale was laid off, and forced to retire. Dale was saddened by this and perhaps even depressed by this. Eventually, Dale transitioned into retirement and focused on caring for his parents and spending time with family members. Dale, who always loved the outdoors,

became a serious hiker and also took an interest in restoring vintage cars.

## Dale Black Today and His Personal Struggles

On April 20th, 2017, local law enforcement arrested Mr. Black for a variety of sexual exploitation charges against minor children and booked him into local custody. Several weeks later, federal authorities initiated an investigation into child pornography activities. In addition to evidence corroborating the exploitation of known minor victims, investigators also seized a large collection of illicit images and videos that supported the now dismissed charges. Mr. Black had been exposed to pornography since his early adolescent days, predating the Internet, at about the age of 12. His use of pornography evolved into an extreme issue that has challenged him for years. While Mr. Black is not trying to deflect responsibility, it is obvious that his pornography addiction over the years served as a pathway and precursor to his hands-on sexual offending. It is plausible to assume Mr. Black's sexual offending could have been diverted if his addiction to pornography had been properly treated at an earlier stage.

## An Overview of Addiction

"Addiction is any behavior that you have difficulty controlling and that you continue to do despite negative consequences."[3] While mainstream media pushes the view that addiction only "makes sense" when talking about substances like heroin, alcohol, or nicotine, the latest research on addiction contradicts this. One study found that, "methamphetamine and cocaine hijack the same reward-center nerve cells that evolved to make sex compelling."[4]

---

[3] I Want to Change My Life: How to Overcome Anxiety, Depression, & Addiction, Steven Melemis, Ph.d., MD, 2011.

Sex addicts are men and women who engage compulsively in one or more sexual behaviors, continue these behaviors despite significant negative consequences, and spend a great deal of time thinking about, planning and engaging in sexual activity.  Over time, sex becomes the primary focus of their lives. Similarly, to other addictions, sex addiction can lead to a self-destructive path.[5] Sexual addiction likely affects a much larger percentage of the general population than does sexual offending. Some research estimates that as much as 3 to 5 percent of the general population may have an active sexual addiction problem.[6]

Only recently catching the eye of some lawmakers, in February 2018, Florida's House of Representatives took action passing a resolution that declared pornography a public health risk. Calling for education, research, and policy changes to protect its citizens, the bill cites:

> Research has found a correlation between pornography use and mental and physical illnesses, difficulty forming and maintaining intimate relationships, unhealthy brain development, and cognitive function, and deviant problematic or dangerous sexual behavior.

Following a thorough investigation into the background and personal history of Mr. Black there are clear indications that the underlying conduct was a by-product of untreated sexual addiction related behaviors, that ultimately manifested itself into sexual offending. Today, Mr. Black understands how deep-rooted his issues are and is hopeful that this Court will permit him to seek a path of recovery and treatment as soon as possible.

---

[4] Journal of Neuroscience 166/3 (2010):771-774: Karla Frohmader
[5] Friedman, Pimentel, Supler, Weiss "Sexual Offenders: How to Create a More Deliberative Sentencing Process" 12-18, The Champion Magazine, December 2009.

[6] Ibid.

**Dale Black is Vulnerable to Victimization or Abuse in Prison**

As a child, Dale was overly protected by his mother. Dale has never been to jail or prison nor has he had any previous encounter with law enforcement. Dale is not physically imposing, Dale struggles in social settings due to continued awkwardness and perhaps even being introverted. Dale's world is very small, and focused on the inner circle of his loved ones. His world does not include interaction with hardened criminals in a closed prison setting. Dale's social awkwardness coupled with a conviction for sexual exploitation matters against children make him prone to attack in prison. A defendant's unusual susceptibility to abuse by other inmates while in prison may warrant a downward departure. ‖*United States v. Parish*, 308 F.3d 1025, 1031 (9th Cir. 2002) (citing *Koon v. United States*, 518 U.S. 81,116 S.Ct.2035)(1996).).[7]

In its ground breaking 2001 report on male rape in prison, Human Rights Watch revealed a broad range of factors that correlate with increased vulnerability to rape. Specifically, prisoners fitting any part of the following description are more likely to be targeted: young, small in size, physically weak, white, gay, first offender, possessing "feminine" characteristics such as long hair or a high voice; being unassertive, unaggressive, shy, intellectual, not street-smart, or "passive"; or having been convicted of a sexual offense against a minor. Inmates with any one of these characteristics typically face an increased risk of sexual abuse, while prisoners with several overlapping characteristics are much more likely than other prisoners to be targeted for abuse.

Dale Black is timid, passive, soft-spoken, unassertive, unaggressive, not street-

---

[7] *In Parish, the district court found that the defendant —was susceptible to abuse in prison because of a —combination‖ of factors: —his stature, his demeanor, his naiveté, [and] the nature of the offense.‖ 308 F.3d at 1031-1032*

smart, awkward, and *a first-time offender who has been convicted of sexual offenses against minors*. Dale will be among the most vulnerable to abuse simply because of his sexual orientation and naivety. Add this to his demeanor, and the nature of the crime—production of child pornography and Dale's susceptibility for abuse becomes a virtual certainty.

## Character Reference Letters on behalf of Dale Black

The following excerpts shed light and insight into the character and background of Dale Black, from the people who know him best.

**Gary Black, one of Dale's brothers shares....**

> Dale has been a care provider to my parents, now in their mid-80's, for decades now in their retirement. While my wife and I are also local and have assisted with my Dad's health issues in recent years, it is Dale that my parent's rely on the most…In just their daily life he has been a tremendous asset to them with getting issues resolved such as problems around the house, cars, and issues with computers and technology. Emotionally the biggest burden and stress from Dale serving time will fall on them.

**Steven Black, his brother share his shock at the underlying charges...**

> My only awareness of his involvement with mentoring of high school students was that he was so successful in mentoring the one that he talked about that he ended up doing very well academically at Gonzaga University, graduating near the top of his class. He never talked with me about any additional mentoring that he had done with any other students, and I was surprised and shocked to learn of the charges against him and his admissions in the plea agreement. That wasn't the brother I knew, and I'm saddened at the future he will face as a result. I miss our close and ongoing relationship and hope that it can be renewed before one of us passes away. I only know Dale as a very intelligent and responsible person, and am confident that once his debts are fulfilled he will be focused on redeeming himself.

Rather than quote every letter provided on Dale's behalf, they have been appended

(Exhibit A). Dale's life history reveals that, despite his shortcomings, he is a beloved, productive citizen who is has proven himself capable of functioning in a law-abiding society. Dale's family and supporters are hopeful of a "fair and just" punishment which will return Dale home at some point and support the value of redemption.

## IV.
## FACTS OF THE CASE AND PROCEDURAL BACKGROUND

Mr. Dale Gordon Black, is a 63-year-old male and citizen of the United States. He has been charged in the Eastern District of Washington, by Indictment, with multiple counts of Child Pornography related matters. Mr. Black has entered a guilty plea to three counts of Production of Child Pornography. Mr. Black's conduct involves sexually explicit conduct that resulted in creation of illicit images. According to the statement of facts in the plea agreement, Mr. Black was involved in similar conduct with six victims. The conduct did not involve intimidation, force, or coercion. Nevertheless, the abhorrent conduct of Mr. Black appears closely related to a dysfunctional pornography addiction.

On December 18, 2018, Mr. Black entered a guilty plea to counts 1-3: Production of Child Pornography. Sentencing in this matter is set for July 16, 2019 before this Honorable Court.

## V.
## APPLICATION OF THE SENTENCING GUIDELINES IN THIS CASE OVERSTATES THE SERIOUSNESS OF MR. BLACK'S CONDUCT

The reasonableness of any sentence is determined by a district court's individualized application of the statutory sentencing factors. Unfortunately, in this case, the Court is working with a guideline that is fundamentally different from most in that, unless applied with great care, can lead to an unreasonably excessive sentence that is inconsistent with §3553.

Sentencing guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *United Sates v. Rita,* 551 U.S. 338, 349 (2007). However, the Commission was prevented from using the empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under §2G2.1 and 2.2 several times since their introduction in 1987, recommending increasingly harsher penalties each time.[8]

The sentencing guideline for production of child pornography-based offenses is §2G2.1, which was part of the original 1987 guidelines.[9] §2G2.1 initially provided for a base offense level of 25 and had a single specific enhancement for the age of the child being under 12 years appearing in the production.[10] Over the years to follow, the Sentencing Commission substantially increased the penalty for "production" offenses based primarily on congressional directives instead of any empirical data.  For example, in 1996 the commission increased the base level to 27 and added the often criticized 2 level enhancement for the use of a computer.[11] In another example of a congressionally directed increase, the Commission was directed under the PROTECT Act to increase the base level of production charges from 27 to 32, also adding a number of additional separate enhancements.[12]

---

[8] United States Sentencing Commission, *The History of Child Pornography Guidelines,* Oct. 2009, available at http://www.ussc.gov/general.20091030_History_Child_Pornography _Guidelines.pdf.

[9] United States Sentencing Commission, *Federal Child Pornography, Full Report to Congress,* December 2012, at 249, available at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

[10] USSC §2G2.1 (1987)

[11] Id.

The statistics offered by the Sentencing Commission clearly show a substantial disapproval by the district courts of the guidelines in many instances. In fiscal year 2004, 84% of the production cases were sentenced within the guidelines.[13] By 2010 the number of production cases sentenced within the guidelines dropped to 56.8%.[14] By 2016 (most recent data available), the rate of offenders convicted of production charges that were sentenced within the guidelines dropped to 50.4%, with the average sentence coming in at 252 months.[15] Of the offenders convicted of production offenses, 38.1% received below range sentences, which did not include those receiving departure for substantial assistance.[16]

The child pornography guidelines have been the subject of intense scrutiny leading to a criticism of their application by district courts. Much of the criticism surrounds distribution and possession cases as they are more prevalent. *However, the implications apply to production charges as well.*

Judges across the country have been critical of the guidelines in child pornography cases, especially the fact that the increase in the guidelines are based on congressional directives as opposed to empirical evidence.[17] In fiscal year 2011 in production of child pornography cases the average guideline minimum was 291 months, despite the fact that the

---

[12] Id.

[13] Ibid.

[14] Ibid.

[15] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf

[16] Ibid.

[17] See also *United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010) (applying abuse of discretion review to a district court's policy-based downward variance from § 2G2.2 because "the Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress")

average sentence imposed was 274 months.[18] The fact that courts are increasingly sentencing below the minimum applicable guideline range was stated very well by the Sentencing Commission:

> Thus, the growing gap in the difference between the average guideline minimums and average sentences imposed in fiscal years 2010 and 2011 is explained by the increased *rate* of below range sentences rather than by an increased *extent* of departures and variances.[19]

The Sentencing Commission is an agency like any other agency. The Commission's guidelines lack the force of law, as the Supreme Court held in *Booker* that courts are no longer bound to rigidly follow the Guidelines. But, in light of the Commission's relative expertise, courts must take the Guidelines into account when sentencing. This deference to the Guidelines is not absolute or even controlling; rather, like judicial review of any agency determination, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors to which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Kimbrough v. United States,* 552 U.S. 85 at 109, 128 S.Ct. 558 (citing the crack cocaine Guidelines as an example of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role"). On a case-by-case basis, courts are to consider the "specialized experience and broader investigations and information available to the agency" as it compares to their own

---

[18] United States Sentencing Commission, *Federal Child Pornography, Full Report to Congress,* December 2012, at 257, available at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

[19] Ibid

technical or other expertise at sentencing and, on that basis, determine the weight owed to the Commission's Guidelines. *United States v. Mead Corp.,* 533 U.S. 218, 234, (2001)(citing *Skidmore,* 323 U.S. at 139, 65 S. Ct. 161).

In keeping with the principles in *Kimbrough*, the Supreme Court held that it was not an abuse of discretion for a district court to conclude that the Guideline's treatment of crack cocaine convictions typically yields a sentence greater than necessary to achieve the goals of §3553(a), because those Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough*, 552 U.S. at 109-110, 128 S. Ct. 558. Much like *Kimbrough*, the guidelines and enhancements found in §2G2.1 and 2G2.2 do not reflect the empirical data and findings of the Sentencing Commission, but instead reflect the history of congressional mandates. It has been clearly established by the Sentencing Commission's report to Congress that on average district courts across the United States are sentencing below the minimum recommended guidelines in child pornography production cases. Therefore, the guidelines should be given minimal consideration in determining the appropriate sentence in this case.

**The Government is asking this Court to sentence Mr. Black extremely above sentences given to Murderers, Kidnappers, Hostage Takers, and others Physically Abusing Children. Such a request is unjust.**

After review of the United States Sentencing Commissions Fiscal Year 2018 third quarterly data report, it is clear that the government wants to punish Mr. Black more severely than those offenders punished for federal murder, kidnapping, hostage taking, and other similar defendants who physically abused children hands-on.[20]

---

[20] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_3rd_FY18.pdf.

According to this report (Table 6) and after reviewing 50,928 (N) cases, the following are the mean and median sentencing for the above offenses:

| OFFENSE | MEAN | MEDIAN | N (Cases of this type Reviewed) |
|---|---|---|---|
| Murder | 300 | 300 | 49 |
| Kidnap/Hostage Taking | 150 | 120 | 49 |
| Sexual Abuse | 135 | 120 | 457 |

The government is requesting this Court sentence Mr. Black to 60 months over the mean/median sentence given to those convicted of federal murder. This request does not comport with the notions of just sentencing.

## VI.
## THE STATUTORY SENTENCING FACTORS IN 18 U.S.C. U.S.C.§3553(a) REQUIRE A SENTENCE BELOW THE GUIDELINES RANGE

Core principles in sentencing have now been resolved by the Supreme Court in *United States v. Booker,* 125 S. Ct. 738*, (2005), Gall v. United States*, 128 S.Ct. 586, 591 (2007) and *Kimbrough v. United States*, 128 S. Ct. at 570 (2007)*.*

> *The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable*.

*-Nelson v. United States, 129 S.Ct. 890,891 (2009).*

What the Supreme Court has described as the "overarching provision" of 18 U.S.C. § 3553(a) is set forth in that provision's very first sentence – that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing

set forth in subparagraph (2) of this subsection." *Kimbrough v. United States*, *128 S. Ct. at 570 (2007)*. This description by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key – in fact, *the* key – requirement that a sentence must satisfy. Thus, factors justifying a sentence outside the guideline range *are no longer required to be "extraordinary." Gall, 168 S.Ct. at 595*.

> Congress could not have been clearer in directing that no
> limitation ... be placed on the information concerning the
> background, character, and conduct of a defendant that a
> district court may receive and consider for the purpose of
> imposing an appropriate sentence…Permitting sentencing
> courts to consider the widest possible breadth of information
> about a defendant "ensures that the punishment will suit
> not merely the offense but the individual defendant."
> *-Pepper, 131 S.Ct at 1240*.

Thus, the challenge in this case is to determine a fair sentence that is sufficient, but not greater than necessary. A sentence that is too severe is unjust, and therefore, also fails to promote respect for and confidence in the law. As it pertains to Mr. Black, the sentence which is sufficient, but not greater than necessary, is probably far less than the guideline range of life imprisonment the probation office has calculated. *Nevertheless, Mr. Black has agreed to participate in the plea agreement process, including restitution, in an effort to illustrate complete acceptance of responsibility and allow closure for all of those involved.* Application of the 3553(a) factors overwhelmingly support a mitigated sentence.

In making this determination, a district court may not simply presume that the guideline sentence is the correct sentence. *Nelson v. United States, 555 U.S. 360, 352 (2009)*. The Court must "treat the Guidelines as the starting point and initial benchmark." *Kimbrough v. United States, 552 U.S. 85, 108 (2007)*. However, the Guidelines are, again, advisory only, and the sentencing court "may hear arguments . . . that the Guideline sentence should not apply." *Rita*

*v. United States, 551 U.S. 338, 351 (2007)*. In fact, it has been recognized that a sentence

within the Guideline range is not necessarily a reasonable sentence, *United States v. Hunt, 459*

*F.3d 1180, 1184 (11th Cir. 2006)* ("there are many instances where the guideline range will not

yield a reasonable sentence . . . in some cases it may be appropriate to defer to the guidelines;

in others not."). Further, the Supreme Court has even instructed sentencing courts to "make an

individualized assessment based on the facts presented" in each particular case, *Gall v. United*

*States, 552 U.S. 38, 49-50 (2007)*, and other courts have reminded trial courts that "district

court judges are involved in an exercise of judgment, not a ritual." *United States v. Grossman,*

*513 F.3d 592, 595 (6th Cir.2008)*.

Finally, a sentencing court may disagree with the sentence called for by the Guidelines

on policy grounds. *See e.g., Kimbrough, 522 U.S. at 101*. In other words, this Court is free to

disagree with the advisory guideline range on general policy grounds, individualized fact

grounds, or simply because this Court concludes that a different sentence is appropriate

"regardless" of the guideline range. *Rita, 551 U.S. at 347, 351 and 356*. ***Thus, the challenge in***

***this case is to determine a fair sentence that is sufficient, but not greater than necessary.***

Other statutory sections also give the district court direction in sentencing. Under 18

U.S.C. § 3582, the imposition of a term of imprisonment is subject to the following limitation:

in determining whether and to what extent imprisonment is appropriate based on the Section

3553(a) factors, the judge is required to "*recognize that imprisonment is not an appropriate*

*means of promoting correction and rehabilitation*".

## A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE (*18 U.S.C.§ 3553(a)(1)*)

Mr. Black recognizes the seriousness of the offenses to which he is pleading guilty to. In referencing the nature and circumstances of the offense, Mr. Black in no way is minimizing the impact his conduct has had on the victims of this case. Nor is Mr. Black disputing the fact that he engaged in sexually explicit behavior for the purpose of producing child pornography. The stipulated facts of the case are graphic, disturbing, and well detailed in the record.

However, the Third Circuit has offered an important caution when considering such sordid offense conduct:

> It has often been stated that child pornography related offenses are very serious crimes that have a terrible impact on real victims. No one could sincerely disagree with that statement, and the seriousness of the crimes is reflected in the penalties that Congress has prescribed as well as in the Guidelines that are promulgated by the Sentencing Commission. However, revulsion over these crimes cannot blind us as jurists to the individual circumstances of the offenders who commit them.

*United States v. Olhovsky, 562 F.3d 530, 552 (3rd Cir. 2009)*

## B. THE PURPOSES OF SENTENCING *(18 U.S.C. § 3553(a)(2))*
### The Seriousness of the Offense and Promoting Respect for the Law, and Just Punishment *(18 U.S.C. § 3553(a)(2)(A))*.

Mr. Black understands the production of child pornography is a very serious offense. He further understands that he is facing a significant sentence regardless of what determination the Court makes. Any sentence the Court could fashion within that range will reflect that these charges are serious, promote respect for the law, and provide just punishment. Given the circumstances of this case and the other sentencing factors for the Court to consider, a sentence of 180 months will achieve all of the prongs associated with this part of §3553. If the Court

were to sentence Mr. Black to the statutory minimum, he would be in his late 70's at the time of his release, surely to be followed by lifetime supervised release.

Promoting respect for the law means more than merely doling out harsh punishment. As noted by the Supreme Court in *Gall v. United States*, *128 S. Ct at 599*, an overly harsh sentence "may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." And as explained by the Third Circuit with respect to child pornography sentences in particular:

> The hideous nature of an offender's conduct must not drive us to forget that it is not *severe* punishment that promotes respect for the law, it is *appropriate* punishment. Although there are clearly times when anything less than severe punishment undermines respect for the law, it is just as certain that unduly severe punishment can negatively affect the public's attitude toward the law and toward the criminal justice system. It is no doubt partly for that reason that jurists have referred to the responsibility of sentencing as "daunting." The power and responsibility of a sentencing court is, indeed, nothing short of "daunting." It requires a careful balancing of societal and individual needs, and an ability to determine a sentence based on dispassionate analysis of those often-competing concerns.

*United States v. Olhovsky*, 562 F.3d 530, 551-52 (3rd Cir. 2009)

These child pornography cases, however have become especially difficult at sentencing as judges must determine punishment by striking a balance between punitive measures appropriate for criminal conduct like that of Mr. Black, yet also understanding and consideration that there is no previous criminal history and otherwise being a productive member of society.

## Just Punishment *(18 U.S.C. § 3553(a)(2)(A))*

The child pornography guidelines are unique to the extent that they have been grossly increased in just recent years. As a result of the Protect Act, which was passed by Congress in April, 2003, the Guidelines added a greater base offense level (27 to 32), which essentially doubled any potential custody time. Additionally, a variety of enhancements were also added to the federal sentencing scheme. With no empirical evidence to support how these increased guidelines support the purpose of sentencing, it suggests, at the very least, that political forces, rather than analytical analysis, have entered the fray as to what constitutes "just punishment."

## Deterrence *(18 U.S.C. § 3553(a)(2)(B))*

Taking into account the public attention and ridicule in this case, it is hard to imagine that such attention along with a sentence that is at least 180 months would not be adequate to serve as a deterrent to future criminal conduct. Regardless of the sentence, Mr. Black is going to spend a significant part of his life incarcerated. Mr. Black will likely be imprisoned longer than his parents and elderly family members will live, and he will also lose a significant portion of his wealth due to his commitment to pay restitution. If a 180 month sentence in this case and the collateral consequences suffered are not a deterrent to a member of the general public, then there is probably not a sentence high enough to deter that particular person.

It is also must be noted that scientific studies regarding deterrence suggest that it is the *fact* of a sentence, not its length, that has a deterrent impact.[21] This would seem particularly true in the case of offenders, like Mr. Black, who are usually first-time offenders who have never been to prison before, and who feel punished not just by incarceration but also by the

---

[21] Kleck, et al., *The Missing Link in General Deterrence Theory*, 43 Criminology 623,653 (2005)

social embarrassment, the ongoing label resulting from having to register as a sex offender, and the continuing intrusion into their lives created by the supervised release which follows any term of imprisonment.

**The Need to Protect Society *(18 U.S.C. § 3553(a)(2)(B))***

One initial factor to consider in evaluating the need to protect society, in this particular case, is that first time offenders generally have a low risk of recidivism.[22] This is particularly true in the case of Dale Black, as evidenced by the application of a risk assessment tool.

The Static 99 has been widely adopted as a measure of sex offense recidivism risk. It is recommended for screening and management of sexual offenders to assess long term potential for sexual and violent recidivism. This same assessment tool is presently used by both United States Probation during the course of supervision and in custody Sex Offender Management programs administered by the Bureau of Prisons. When the static 99 risk assessment tool was applied to Mr. Black (Exhibit B) he scored in the LOWEST risk category with a score of -1 (negative 1), and a corresponding recidivism rate of 2.9 percent.

Other relevant factors in protecting society that the sentencing guidelines related to child pornography offenses, *did not take into consideration when promulgated are:*

- Lifetime Supervised Release is now available, as of 2004;

- Stringent and behavior related supervised release conditions and strict supervision policies such as sex offender treatment, search, polygraph, surveillance and increased contacts in the community are now all standardized by the Administrative Office of the United States Courts for federal probation officers, as of 2011;

- Sexual Offender Registration and Notification Act (SORNA) as of 2006, requiring the registration of all sexual offenders;

---

[22] *Sex Offenders: Recidivism and Collateral Consequences*, Tweksbury R., Zboga, K., et al:Report for National Institute of Justice, March 2012

- Sexually Dangerous Person Designation, as of 2006, thus exposing repeat offenders to potential civil commitment;

One additional factor to consider in evaluating the need to protect society, in this particular case, is that offenders like Mr. Black, a first-time offender, generally have a low risk of general recidivism. This lack of criminal history is significant and relative to recidivism. The Sentencing Commission has stated as follows in this regard:

> The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system.

> *U.S.S.C., "Recidivism And The First Time Offender,"* (May 2004).

The sentence imposed must also "protect the public from further crimes of the defendant" 18 U.S.C. § 3553(a)(2)(c). *Gall v. United States*, 128 S.Ct. 586, 591 The Supreme Court in the *Gall case* aptly observed that the standard conditions of probation imposed upon defendants "substantially restrict their liberty". *Gall, supra 588.* With appropriate conditions, supervised release empowers the court to ensure rehabilitation, full restitution to victims, payment of fines, protection of the public, and compliance with the law. If the defendant fails to comply, the violation of probation gives the judge power to mete out greater punishment, including incarceration. As noted, "Probation is not leniency." *United States v. Bragg*, 582 *F.3d 965, 973 (9th Cir. 2009).*

## VII.
## RESTITUTION AND FINES

Mr. Black does not contest the forfeitures in this case. Mr. Black also agrees that the $5,000 special assessment under the Justice for Victims of Trafficking Act 2015 is appropriate. Mr. Black has agreed that restitution is appropriate in this case. Finally, Mr. Black agrees that a fine is appropriate, however, he does not agree that the fine should be $750,000.

Turning first to restitution, Mr. Black agreed to pay Victim A any outstanding restitution that Victim A was owed.  It is important to note that in January of 2019, Victim A and Mr. Black entered into a civil settlement for $325,000 that released Mr. Black from all monetary claims being made by Victim A. As such, Mr. Black is unaware of any additional restitution that is owed to Victim A.

Turning next to victims Surfer Hair, RapJerseys, and SpongB, Mr. Black does not object to the requested restitution to these three victims in an amount totaling $19,150.

Mr. Black is subject to a $250,000 statutory maximum fine per pled count, for a total maximum statutory fine of $750,000. 18 U.S.C. § 3571(b). The Sentencing Guidelines fine range for the pled offenses of conviction is $50,000 to $750,000. ECF No. 53 at 16; U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1). Mr. Black requests that the Court impose a fine of $50,000 per pled count.

The Sentencing Guidelines state that "the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). Mr. Black agrees that the imposition of a fine is mandatory under the Sentencing Guidelines because he has the ability to pay a fine.

The imposition of fines and their amount is subject to the factors of 18 U.S.C. § 3572(a) and U.S.S.G. § 5E1.2(d).  Turning first to 18 U.S.C. § 3572(a), it states that "[i]n determining

whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider…":

> (1) the defendant's income, earning capacity, and financial resources;
>
> (2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
>
> (3) any pecuniary loss inflicted upon others as a result of the offense;
>
> (4) whether restitution is ordered or made and the amount of such restitution;
>
> (5) the need to deprive the defendant of illegally obtained gains from the offense;
>
> (6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;
>
> (7) whether the defendant can pass on to consumers or other persons the expense of the fine; and
>
> (8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

The first inquiry involves Mr. Black's ability to pay a fine. There is no question that Mr. Black can pay a fine. However, the true value of his assets is important. The United States claims that Mr. Black is undervaluing his income by estimating taxes and tax penalties.  As soon as Mr. Black withdraws funds to pay the fines, he will incur actual taxes and penalties. This isn't speculation, this is the logical and known consequence of what will happen when the money is withdrawn. The United States uses Mr. Black's calculation of paying $330,298 in taxes and penalties if he withdraws m money from his Vanguard 401(k) as an example of Mr. Black devaluing his income. While the exact amount may be slightly more or less than

$330,298, it will be approximately that amount. Further, Mr. Black clearly delineated in his financial disclosure how he arrived at the figures. It is unjust for the Government to try to ascribe hundreds of thousands of additional dollars to Mr. Black that the United States will actually take from him in the form of taxes. A reasonable estimation of Mr. Black's net worth is $1,051,336.

It is also significant that Mr. Black has paid a $325,000 civil settlement to Victim A. Mr. Black agreed to pay this large settlement without the need for Victim A to endure civil discovery or a trial.

Mr. Black has agreed to pay $19,150 to victims Surfer Hair, RapJerseys, and SpongB.

Mr. Black also agreed to pay the United States $185,900 in lieu of forfeiture, of his house and agreed to forfeit his 2015 Subaru Legacy worth approximately $20,000.

If the Court imposed a fine of $750,000, Mr. Black would be left with approximately $224,771 in assets.  This would also be after Mr. Black has paid or has agreed to pay or be forfeited approximately $570,000 to the various victims and the United States.

Mr. Black will receive a pension of $3100.  Again, this pension will be taxed and it is expected that Mr. Black will gross approximately $2200 a month.  According to the U.S. Bureau of Labor Statistics, the median household income in January of 2019 was $63,688.00. If the Court were to order $750,000 in fines, Mr. Black would be in peril of being at near poverty level income shortly after he would be released from prison.

The second inquiry involves the burden that the fine would place on Mr. Black.  As stated above, a $750,000 fine would leave Mr. Black perilously close to the poverty line. When released from prison, Mr. Black will have no home or vehicle.  He will likely be unable

to work.  He will essentially be starting from scratch.  Thus, the burden on Mr. Black of a $750,000 fine would be crushing.

Third, the Court should consider any pecuniary loss inflicted upon others as a result of the offense.  This is inapplicable in this case.

Fourth, the Court should consider restitution paid and the amounts.  As stated above, Mr. Black has paid a $325,000 civil settlement to Victim A and $19,150 to Surfer Hair, RapJerseys, and SpongB.

Fifth, the Court should consider the need to deprive the defendant of illegally obtained gains from the offense.   This is inapplicable in this case.

Sixth, the Court should consider the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence.  While there will certainly be a cost involved in imprisoning and supervising Mr. Black, that cost would certainly be mitigated with a $150,000 fine.

Seventh, the Court should consider whether the defendant can pass on to consumers or other persons the expense of the fine.  This is inapplicable in this case.

Eighth, the Court should consider if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.  This is inapplicable in this case.

 The U.S.S.G. § 5E1.2(d) factors are similar to the U.S.S.G. § 5E1.2(d) factors. Section 5E1.2(d) states that "[i]n determining the amount of the fine, the court shall consider":

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense;

(7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and

(8) any other pertinent equitable considerations.

While the above factors have been previously addressed, extra consideration must be paid to the fact that fine must be imposed mindful of the combined sentence, to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), promoting respect for the law, providing just punishment and to afford adequate deterrence. In the best-case scenario, Mr. Black is facing 15 years of incarceration. In the worst-case scenario, he is facing over 30 years. This amount of time for a 63 year old man is incredibly significant and § 5E1.2(d) requires the Court to consider the total sentence when imposing a fine. A $150,000 fine is a very large sum of money. It is an amount that reflects the seriousness of the offense, promotes respect for the law, and is just and a deterrent. Perhaps most importantly, for equity and justice, is that a $150,000 fine is **in addition** to the $570,000 dollars that Mr. Black has or will pay based on this case.

# VIII.
## CONCLUSION

There is nothing redeeming or even understandable about these types of crimes. However, our system of justice requires the Court to remove emotion and vengeance from consideration and sentence the defendant standing before them, with the shortest sentence that will further the goals of federal sentencing.[23]

Dale Black is before the Court for sentencing. He has voluntarily entered a guilty plea to multiple charges of Production of Child Pornography. By way of his guilty plea, he is sparing his victims and the criminal justice system any need for a criminal trial. Additionally, Mr. Black looks to alleviate and minimize further pain, by resolving restitution matters quickly. Mr. Black's guilty plea illustrates an individual who is truly ashamed and embarrassed of his conduct, but also of one who wholeheartedly accepts responsibility for his behavior.

Mr. Black was raised in a fruitful and loving home. However, his challenges with loneliness, sexual identity, and pornography addiction led to self-loathing and a dark deviant lifestyle. These underlying currents in Mr. Black's life eventually corrupted his judgement and pushed Mr. Black into behavior that was inconsistent with his personal values.  Mr. Black has clearly made serious mistakes in recent years; however, his errors should not overshadow a lifetime of hard work and dedication to his family. Mr. Black stands before the Court and requests compassion and understanding.

Mr. Black is a first-time offender who with post-release counseling and stringent supervised release conditions is not likely to become a repeat offender. Further, Mr. Black must

---

[23] *See* 18 U.S.C. § 3553(a) (the "court shall impose a sentence sufficient, but not greater than necessary… [the so-called 'parsimony' principle of federal sentencing]").

register as a sex offender in any community where he lives and works. Thus, a sentence below the advisory guidelines should not be interpreted as leniency. Mr. Black will live with the stigma of his conviction for many years to come; a stigma that will dictate where he can live, work, or recreate.

Dale Black has many personal challenges at the moment, but nevertheless he is ready to accept responsibility for his actions and move forward with his life. To that end, it is clear that leniency and compassion will be the vehicle that will eventually return Mr. Black, ***a first-time offender***, to the continued path of law-abiding citizenship.

A 30-year sentence is not necessary in this case in light of Mr. Black's background. This is further corroborated by a validated risk assessment tool that confirms Mr. Black is a low risk of sexual recidivism, who will even be even less of a risk at release due to his elderly age at that time. The reality is, that a 30-year custodial sentence is beyond the scope of just punishment.

Mr. Black understands that part of taking responsibility for his conduct includes going to federal prison for a significant period of time, and he is ready to do so. An appropriate sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) is mandated. Mr. Black respectfully submits that a downward variance is also warranted in this case. Mr. Black, as a first-time offender, should not receive a greater sentence than the national average where 74% of the defendants perpetrated sexual offenses on their victims as part of the child pornography production. An appropriate and just sentence in this matter sits at 180 months with a period of supervised release for life, which is also a "substantial restriction of freedom," *Gall v. United States*,

(2007)[24] – all of which is more than sufficient to constitute just and fair punishment.


      Respectfully Submitted on this 2nd day of July, 2018.


                          ***/s/ Scott W. Johnson***
                          Scott W. Johnson
                          Attorney for the Defendant
                          State Bar Number: 27839

---

[24] This is especially true in the case of a sexual offender, because the conditions imposed on such defendants are usually significantly more intrusive and demanding. In May of 2011, the Administrative Office of United States Courts issued national policy to federal probation officers outlining appropriate procedures in the community supervision of sexual offenders. In addition, all sexual exploitation offenders must register as sex offenders and carry that public brand.

# VIII.
## LIST OF EXHIBITS

A. CHARACTER REFERENCE LETTERS ON BEHALF OF DALE GORDON BLACK

B. STATIC 99R RISK ASSESSMENT ADMINISTRED TO MR. BLACK

C. DOCUMENTS RELATED TO MR. BLACK'S PERSONAL HISTORY

D. FAMILAL AND PERSONAL PHOTOS

E. CURRICULUM VITAE OF SENTENCING CONSULTANT ROGER PIMENTEL